Curtis A. PLANTE, Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,

and

Vigen Construction Company, Respondent.

Civ. No. 890303.

Supreme Court of North Dakota.

April 25, 1990.

Hannig Law Office, P.A., Moorhead, Minn., for appellant; argued by Jeffrey R. Hannig.

Hugh Patrick Seaworth, Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

GIERKE, Justice.

Curtis A. Plante (Plante) appeals from a district court judgment which affirmed an order awarding benefits issued by the North Dakota Workers Compensation Bureau (Bureau). We affirm.

During 1986, Plante was employed by the Vigen Construction Company, a Minnesota corporation headquartered in East Grand Forks, Minnesota. On June 25, 1986, Plante was constructing grain bins for Vigen Construction near Manville, North Dakota. On that date, Plante fell from a scaffold and injured his back.

On July 3, 1986, Plante filed a claim with the Bureau to collect temporary total disability benefits. The Bureau paid Plante temporary total disability benefits from June 26, 1986, until October 29, 1986, the date when Plante returned to work at Vigen Construction. However, Plante could not tolerate the work requirement of his former job and consequently, he was considered temporarily and totally disabled as of October 29, 1986. On June 25, 1987, Plante commenced a Minnesota worker compensation claim arguing for temporary total disability benefits from October 29, 1986, permanent partial disability benefits for a 14% disability of his whole body, and medical expenses resulting from his injury.

Before the Minnesota workers compensation case was scheduled for trial, Plante settled his case with Minnesota for $20,000, of which $16,689.51 was deemed to represent benefits for a 10.5% permanent partial impairment with the remaining amount, $3,130.49, representing twelve weeks of temporary total disability benefits. In exchange for the $20,000, Plante agreed to a full, final and complete settlement of any and all past or future claims under the Minnesota Workers Compensation Act arising out of his June 25, 1986, work injury.

After his settlement with Minnesota, Plante filed with the Bureau an application to reopen his North Dakota claim and to request a formal hearing. Plante desired to reopen his North Dakota claim because Minnesota law limited temporary total disability payments to 90 days whereas North Dakota law contained no such limitation.

The Bureau issued an order denying further benefits on June 9, 1988. The Bureau recognized that Section 65–05–05, N.D.C.C., provided in part that, "Where compensation is received through some other state act no compensation shall be allowed under this title [workers compensation] unless such benefits are awarded by another state as a supplement to this state's benefits." Finding that the Minnesota award was not a supplement to any of the benefits that Plante had received through North Dakota Workers Compensation, the Bureau held that Plante was not entitled to further benefits beyond those previously paid by the North Dakota and Minnesota Workers Compensation Bureaus.

Plante filed a timely request for rehearing and on October 25, 1988, the Bureau issued an order awarding benefits thereby revoking their previous order which denied benefits. The Bureau found that in light of Section 65–05–05, N.D.C.C., all benefits awarded to Plante by Minnesota were not, except with respect to medical benefits, awarded as a supplement to benefits paid to Plante through North Dakota's Workers Compensation Act. The Bureau found that Plante had waived his entitlement to further North Dakota benefits, with the exception of medical benefits, by accepting the Minnesota award. Thus, the Bureau awarded Plante reasonable medical expenses for treatment of his back injury. On appeal, the district court affirmed the Bureau's October 25, 1988, decision. This appeal followed.

■ When we consider an appeal from a judgment of the district court reviewing the decision of an administrative agency, we review the decision of the agency, not the decision of the district court. *Levey v. North Dakota Worker's Compensation Bureau,* 425 N.W.2d 376, 377 (N.D.1988).

■ Our review of this appeal is governed by Section 28–32–19(1) of the North Dakota Century Code, which requires us to affirm the Bureau's decision unless the Bureau's decision or determination is not in accordance with the law. In order to determine whether the agency decision is in accordance with the law, we look to the law

and its application to the facts. *Bickler v. North Dakota State Highway Com'r,* 423 N.W.2d 146, 147 (N.D.1988).

■ Plante argues on appeal that the Bureau and the district court misconstrued the meaning of the word "supplement" in Section 65–05–05, N.D.C.C. Plante contends that the benefits awarded to him under the Minnesota Workers Compensation Act were supplemental to the North Dakota benefits that he had received. Plante maintains that the word "supplement", as understood in its ordinary sense in this context, should be defined as benefits which are given in addition to benefits already received.

Plante believes that the $16,869.51 permanent partial disability award in Minnesota was in addition to North Dakota's benefits because North Dakota had awarded nothing to Plante for permanent partial disability due to the fact that Plante had not filed a claim for such benefits. Likewise, Plante argues that the $3,130.49 award that he received in Minnesota for temporary total disability was in addition to North Dakota's award for temporary total disability. Because North Dakota's temporary total disability benefits ceased on October 29, 1986, Plante contends that his October 29, 1986, claim in Minnesota for *prospective* temporary total disability benefits was clearly in addition to North Dakota's temporary total disability award because his Minnesota claim was for a period of time not covered by the North Dakota award.

Thus, Plante maintains that he should not be barred from collecting North Dakota workers compensation benefits as long as the appropriate credit is applied to the North Dakota award so as to insure that he does not receive a double recovery from two states for the same injury. He argues that there is nothing wrong in trying to obtain the highest available amount of compensation, regardless of the source, as long as there is no double recovery.

The Bureau argues that the Minnesota settlement which Plante entered into was a full and final settlement of his injury claim.

Furthermore, the Bureau maintains that the settlement agreement does not indicate that the Minnesota award is to be considered a supplement to any North Dakota benefits. Finally, the Bureau contends that if the Bureau is required to award Plante additional benefits, Plante would receive a double recovery for his injury.

We find that the Bureau properly interpreted the meaning of the word "supplement" for purposes of Section 65–05–05, N.D.C.C., analysis. While Plante's argument is innovative, it does not withstand close scrutiny. In interpreting a statute, this Court has held that words must be given their plain, ordinary and commonly understood meaning and consideration should be given to the ordinary sense of statutory words, the context in which they are used, and the purpose which prompted their enactment. *Coldwell Banker v. Meide & Son, Inc.*, 422 N.W.2d 375, 379 (N.D.1988) (citation omitted); Section 1–02–02, N.D.C.C. Supplement has been defined as "something added ... to make up for a lack or deficiency", "to add to", or "that which is added to a thing to complete it." Webster's New World Dictionary 1430 (2nd co. ed. 1980); Black's Law Dictionary 1608 (Rev. 4th ed. 1968).

The legislative history of Section 65–05–05, N.D.C.C., indicates that the drafter's intent was to avoid duplication of benefits and to compel a claimant to seek his or her remedy in a single state. Prior to being amended in 1981, Section 65–05–05, N.D.C.C., stated in pertinent part that, "Where the injury is sustained outside the state of North Dakota and compensation is claimed and received through some other state act no compensation shall be allowed under this title." Section 65–05–05, N.D.C.C., was amended by the 1981 Legislative Session in Chapter 643. The purpose behind the legislative amendment is evident from the testimony given to the Legislature by Mr. Bronald Thompson, chairman of the Bureau in 1981. The drafter's notes to Senate Bill No. 2127, which became Chapter 643, indicate that he testified as follows:

"In its present form, Section 65–05–05 provides that where an injury is sustained outside the state of North Dakota and an individual receives compensation from another state the Bureau may deny benefits. However, there are instances in which an individual can be injured in North Dakota and still receive benefits through some other state act. Therefore, the Bureau is requesting that Section 65–05–05 be amended so that if an individual is covered under any other state act, whether the injury occurs inside or outside of North Dakota, the Bureau is not liable. *Simply put, the Bureau wishes to insure that an employee is not receiving benefits from two states for the same loss.* (Emphasis added.)

While the purpose behind the amendment seems clear, the "supplemental" language used by the Legislature to further this purpose is ambiguous and subject to different interpretations.

In light of this stated purpose, we construe the word "supplement" for purposes of Section 65–05–05, N.D.C.C., analysis, to entail benefits awarded in a second state which are in addition to benefits awarded in the first state for either the identical period of time or the same type of benefit. We find that Plante misconstrues the importance of the fact that the Minnesota award entailed time periods and types of benefits not covered by the North Dakota award. In this case, Plante's Minnesota award was a distinct and separate award from the North Dakota award rather than being an addition *to* the North Dakota award because the Minnesota award entailed different periods of time and different benefits than the North Dakota award. Therefore, the Minnesota award was not a "supplement" within the meaning of Section 65–05–05, N.D.C.C.

■ Notwithstanding the aforementioned ground for affirmance, we are compelled to discuss further grounds for disallowing Plante's theory of recovery.

We have recognized that the Legislature's purpose in enacting Section 65–05–05, N.D.C.C., was to prevent the duplication of benefits. *Bekkedahl v. North Dakota Workmen's Comp. Bureau*, 222

N.W.2d 841, 843 (N.D.1974). While Plante maintains that his theory would not allow him a double recovery, we find that if his theory were allowed, Plante would receive greater benefits than contemplated by either the North Dakota or Minnesota worker compensation plans.

From a policy standpoint, there are numerous arguments that the availability of the supplementary award procedure is desirable for an injured employee. In his treatise on workers compensation, Larson states that some of the reasons for the availability of the successive award is that:

> "[E]mployees typically are at a disadvantage in learning of their potential rights under various statutes of other states, especially since complex conflict-of-laws issues may sometimes be involved; hence they may quite forgivably make an unfortunate choice at the time of filing the first claim.... In any case, the worst that can happen to the defendants, apart from the inconvenience mentioned above, is that they will have to pay no more than the *highest compensation allowed by any single state having an applicable statute*—which is the same amount that would always be payable if the claimant made the best-informed choice the first time." Larson's Worker's Compensation § 85.60 (1990) (emphasis added.)

It seems clear from the above language that the general policy behind the successive award doctrine is for the employee to choose the most desirable compensation plan as a whole. Under Plante's theory, he would receive more than "the highest compensation allowed by any single state" because he would be picking and choosing which benefits, within each state's workers compensation scheme, that he would file a claim for.

We note that Plante filed for permanent partial disability benefits in Minnesota be-

cause they were vastly greater than the permanent partial disability award in North Dakota. Plante received $16,689.51 from Minnesota for his permanent partial disability. Further, Plante received $3,130.49 from Minnesota for his temporary total disability. However, he desired to file in North Dakota because North Dakota's temporary total disability award is much greater than Minnesota's.[1]

To illustrate, assume that Plante would have received $10,000 for permanent partial disability and $12,000 for temporary total disability if he would have refiled his complete claim in North Dakota after receiving his Minnesota award.[2] Under Plante's theory, he would not refile in North Dakota for permanent partial disability benefits because Minnesota's $16,689.51 award was greater than North Dakota's benefits. However, he would file a claim in North Dakota for temporary total disability benefits and, if accepted by the Bureau, he would expect to receive $12,000 less a credit for the amount already received from Minnesota for temporary total disability payments, $3,130.49. Thus, in sum, Plante would receive $16,689.51 from Minnesota for partial permanent benefits together with $12,000 for temporary total benefits[3] for a combined total of $28,689.51. However, under the North Dakota compensation scheme, Plante would have only received a $22,000 combined award whereas in Minnesota, he would have only received the original settlement amount, $20,000. Thus, Plante would receive more than either state contemplated under their workers compensation plans if this Court were to allow him to recover under his theory.

We agree with the following rationale of the district court:

> "The employee argues that there is nothing wrong with seeking the highest avail-

1. Plante's medical benefits awarded by North Dakota are not an issue on appeal.

2. These figures are indicative of the uncontradicted benefit correlation between North Dakota and Minnesota's compensation schemes. Minnesota's awards for permanent partial disability are greater than North Dakota's while

North Dakota's temporary total disability award amounts are greater than Minnesota's.

3. The $12,000 of temporary total benefits would be comprised of $3,130.49 from Minnesota and $8,869.51 from North Dakota.

**200**

able benefits. Certainly where claims may be brought in more than one state, the employee may choose to file for benefits in the state which provides the benefits the employee finds most desirable. He may not, however, pick and choose which benefits he will file for in each state. Each state has adopted a compensation plan as a whole. To allow an employee to file for the highest benefits of one type in one state and the highest benefit of another type in another state would allow the employee to receive greater compensation than either state contemplated."

For the foregoing reasons, we affirm the Bureau's decision and accordingly, affirm the district court's decision in all respects.

ERICKSTAD, C.J., and
VANDE WALLE, LEVINE and
MESCHKE, JJ., concur.